**In re HERSH.**

**No. 35813.**

District Court, E. D. New York.
July 21, 1939.

Archibald Palmer, of New York City, for bankrupt.

Nathan E. Zelby, of New York City (Julius Zizmor, of Brooklyn, N. Y., of counsel), for trustee.

BYERS, District Judge.

Hearing on bankrupt's petition to review an order granted by the Referee on May 25th, 1939, directing the bankrupt to turn over to the trustee the sum of $4061.-78.

The petition upon which the proceeding was initiated recites the diversion by the bankrupt from his creditors to himself of the following sums of money as shown by his books which indicate that he collected various items, cash, checks and notes, but did not deposit them in the bank account maintained by him in connection with his clothing business, namely:

| 1938 | |
| --- | --- |
| April | $ 809.00 |
| May | 188.03 |
| June | 1390.54 |
| July | 829.20 |
| August | 1195.01 |
| Total | $4411.78 |

The Referee has found that the evidence sustains the petition and has granted the order as stated, crediting the bankrupt with $350.00 paid by him from the foregoing total, to the New York Credit Men's Association in connection with a General Assignment which he made to that organization or its nominee on August 30th, 1938.

On October 21st, 1938, an involuntary petition in bankruptcy was filed, because a 40% settlement offered in the assignment proceedings, failed of unanimous acceptance. Apparently it was deemed possible to effectuate such a settlement through the coercion of bankruptcy.

Over 500 pages of testimony have been taken, largely devoted to unproductive colloquy and repetitious so-called cross-examination. Finally the bankrupt admitted the receipt by him of the items above referred to, and that they were not deposited in his bank account, but were taken by him for personal uses, apparently without any consideration of the rights of his creditors.

So much of the Referee's order is therefore not under attack.

At least since the case of In re Schlesinger, 2 Cir., 102 F. 117, it has been the law in this circuit that an individual

bankrupt may be held responsible to his trustee for funds diverted by him into his own pocket which in justice and equity belong to his creditors. The inquiry here comes down to the mere question of the amount which should have been embodied in the order.

The alleged errors complained of are 14 in number, and will be the subject of such comment as they seem to require:

1. There was no application to adjourn the hearing further on April 25, 1939, for the purpose of examining the bookkeeper, hence there was no error in denying it. The subject is briefly referred to in the memorandum disposing of the petition to review the order denying the application to reopen.

2. If there were error in signing the turnover order without notice, and it is not here stated that there was, the bankrupt could have cured it by moving to resettle, which he failed to do.

3. The findings of the Referee are not contrary to the evidence.

4. The Referee correctly found that there was no documentary evidence of payments which the bankrupt said he made to his father or brother. There were checks produced of payments to his doctor, thus tending to discredit the bankrupt's testimony as to large cash payments of amounts that he could not—so he said—recall. In other words this specification of alleged error is not correctly drawn.

5. The Referee did not state that the bankrupt was required to present documentary proof of these alleged payments, he merely noted his failure to do so. A reading of the bankrupt's testimony at the first meeting of creditors, and in this proceeding, indicates to this court that a minimum requirement of corroboration would be the insistence upon some tangible written evidence of what he deposed on the witness stand.

6. The Referee did not err in failing to accept the bankrupt's uncorroborated testimony. No one could.

7. The Referee did not err in presuming that the bankrupt still has these funds in his possession. At least it is thought that the proceeds of these several collections are subject to his control, which is the same thing.

How far a trustee can produce evidence of the bankrupt's having money in his possession at the date of the turnover as the opinion in Danish v. Sofranski, 2 Cir., 93 F.2d 424, probably requires (subject, however, to Re Pinsky-Lapin Co., 2 Cir., 98 F.2d 776), is an interesting question about which much might be written. Certain it is that the bankrupt who will admit that he has the money which he has been called upon to disgorge, would be so rare a curiosity that he would never be encountered in the flesh by a Referee in Bankruptcy. Consequently a District Judge must be satisfied with something less than the performance of a miracle by a trustee in the presentation of his case.

When the facilities for secreting money by a scheming bankrupt are contemplated, it becomes clear that circumstantial evidence probably affords to the trustee his only medium of persuasion, and this record contains something of the sort, for it is made clear that hard upon the initiation of the proceeding there was a delay attendant upon an offer of compromise by the payment to the trustee of some $2500.00.

It should be stated that the bankrupt himself disclaimed any knowledge of the effort, and asserted that his father-in-law conveniently undertook the negotiations, and that the bankrupt, who was of all persons the most concerned, knew absolutely nothing about the matter, including the amount involved and the size of the check said to have been placed in the hands of the bankrupt's attorney as earnest money.

It is a fair inference that the Referee placed no reliance upon this, or most of the other testimony of the same witness. There does come a time when the credulity of the trier of facts reaches the breaking point.

Whatever was thought by the Referee on the subject, the record convinces this court that the incident provides circumstantial evidence of the ability of the bankrupt to comply with a turnover order.

What has been written covers this assignment of error concerning the presumption of continued possession of the money by the bankrupt.

8 and 9. It is said that the Referee erred in deciding that, in the absence of a satisfactory explanation by the bankrupt as to the disbursement of the moneys which he admitted having diverted from his business, it must be presumed that his

possession thereof continues. As a matter of reason it seems that this must be so.

It is not understood that the Referee bases his order upon a presumption of law which relieves the trustee of his burden of proof. He simply observes that the bankrupt undertook to demonstrate that the money had been spent, but failed to testify convincingly on the subject or to offer any proof that sustained his assertion, because in almost every instance in which he gave particulars, the trustee was able to demonstrate the falsity thereof; as for instance in the matter of doctor's bills, garage charges and alleged "business" trips in his automobile.

If the Referee's findings are correctly understood in the respect herein discussed, it is thought that no error has been committed.

10, 11, 12 and 13. The Referee is said to have erred in finding that the bankrupt has in his possession or control the said sum of $4061.78.

The main attack under this assignment is based upon the alleged failure of the books to disclose the precise dates upon which the item of $809.00 shown to have been taken by the bankrupt as of April 30, 1938, actually came into his possession. It is argued that some of the items making up this total, probably came into his hands earlier than April 30th and that may be true. However it is not disputed that according to the ledger and cash book, that entry appears and it is not seen wherein any injustice is done to the bankrupt by accepting his own records on the subject.

It should be stated that the books and records reveal that during the five months period from April to October, inclusive, the bankrupt paid himself by check the sum of $1098.12 which was at the rate which he had been drawing for the two or three years previous to this period, for living expenses of from $40.00 to $50.00 per week. Also there were similarly drawn for business expenses in the same period, $830.77. These two sums equal $1928.89 mentioned in the Referee's opinion. The second item cannot of course be charged against the bankrupt in full, but since his testimony was that he hired no help of any kind, and performed every task for himself, and does not indicate that he paid all of $830.77 for rent, heat, light, etc., the sum of these drawings has a place in the financial picture presented by the testimony.

To the $1098.12 there should be added not less than $500.00 according to the ledger, which indicates a total of $1600.00 drawn for living expenses.

The Referee treats that as a separate item in addition to the $1098.12 above enumerated, but I am unable to read the testimony to the same effect. Perhaps the Referee is right, but in view of the paucity of assistance given by the bankrupt in stating how much he spent, and the nature of his disbursements, it is not to be wondered at that there is some confusion on the subject.

It sufficiently appears that during the five months period, the bankrupt and his family, consisting of his wife and a five year old son and himself, had over $1500.00 from his business, which was amply in accord with his previous scale of living to justify the conclusion that all of the sums which are set forth in the Trustee's petition were in fact diverted from his business creditors by the bankrupt.

The figures tabulated in the Referee's opinion include items of discount as shown by the books or other records, and the testimony. If the bankrupt was entitled to a higher allowance for discount of post-dated checks, he failed to offer testimony in support thereof.

14. The Referee's failure to grant an adjournment on April 25th. This is a repetition of the first assignment of error, and has been disposed of in connection therewith.

The testimony as a whole presents the picture of a business man who had been established four or five years, making up his mind to adjust his debts on a basis of 40% whether his creditors were satisfied or not.

In order to create the necessary showing, he deliberately secreted a substantial portion of his receivables, and then set about writing off 60% of his debts. He has encountered difficulty in accomplishing his purpose, because the law does not look with favor upon those who are detected in such an enterprise.

The manner in which the proceeding has been conducted by the Referee, under most trying circumstances, and in the face of advocacy which was designed to betray him into indiscretion, deserves the commendation of the court.

Petition to review is denied. Settle order.